## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ROBERT L. SALIM,** | * | **CIVIL ACTION NO. 1:19-cv-00442** |
| *Plaintiff* | * | |
| **VERSUS** | * | |
| | * | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA HEALTH SERVICE &** | | |
| **INDEMNITY CO.,** | * | |
| | | **MAGISTRATE JUDGE JOSEPH** |
| *Defendant* | * | **H. L. PEREZ-MONTES** |

\*      \*      \*      \*      \*      \*

### SUBMISSION BRIEF ON BEHALF OF
### LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY,
### d/b/a BLUE CROSS AND BLUE SHIELD OF LOUISIANA

Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"), in compliance with this Court's Amended ERISA Case Order (Doc. 32), files this Submission Brief on the Merits.

### STATEMENT OF THE CASE

A PPO Group Care Group Health Benefit Plan, Contract XXXXX1635 ("Plan"), was issued to Robert L. Salim, APC and provided coverage for Robert L. Salim (hereinafter "Plaintiff" or "Salim"), with an original effective date of May 1, 2009, including Employee Enrollment Form and Schedule of Benefits for amended effective date May 1, 2018.[1] Salim was diagnosed with throat cancer in or around September 2018.[2] Salim sought treatment from MD Anderson Cancer Center.  On October 10, 2018, a Pre-authorization request

---

[1] (AR 001-119).
[2] (AR 124-125).

from M. D. Anderson Cancer Center was sent to BCBSLA .[3] On October 12, 2018, BCBSLA

forwarded to Salim a letter denying authorization for *Proton Treatment Delivery, Simple*

as not medically necessary.[4] [5]   On October 12, 2018, BCBSLA also denied authorization

for *Special Radiation Treatment Procedure and Guidance for Localization of Target*

*Delivery of Radiation Treatment Delivery* as not medically necessary.[6]

On October 17, 2018, Salim sent a letter to Juanita I. Rodriguez of BCBSLA stating

the company was arbitrary and capricious in its denial of the proton beam therapy.[7]

BCBSLA treated this letter as Salim instituting a first level appeal under his contract.[8]

On October 20, 2018, BCBSLA upheld the denial of the pre-authorization on appeal as

the treatment was not medically necessary.[9]   BCBSLA found that:

"Image Guidance in Radiation Oncology and Special Treatment Procedure and Special
Physics Consult do not apply as image guidance for proton beam therapy will not be
utilized and there is no extra time, effort, or resources associated with complex radiation
therapy required. The AIM guidelines: Radiation Oncology, Proton Beam Therapy, state
that proton beam radiation therapy is not considered medically necessary in adult
patients with head and neck cancer.... Although there are several trials currently
underway, there are currently no published randomized studies comparing proton
therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and
neck cancers."

October 30, 2018, MD Anderson Proton Therapy Center instituted a second level

appeal by requesting an urgent external review by an independent review organization

---

[3] (AR 120-129).
[4] (AR 130-134).
[5] AIM Specialty Health ("AIM") assists in the management of BCBSLA health benefits plans.
AIM is an independent company that provides utilization management for certain services on
behalf of BCBSLA.
[6] (AR 135-144).
[7] (AR 157).
[8] (AR-120-225).
[9] (AR 193-219).

("IRO").[10]  Medical Review Institute of America, LLC's ('MRIA')[11] sent correspondence to Robert Salim dated October 31, 2018, stating that the prior denial of the requested PBT was upheld. [12]

## THE PLAN

The Plan is governed by ERISA. ERISA preempts all state law claims.  The Plan vests the plan administrator with discretionary authority to determine eligibility for benefits and construe the terms of the Plan. Article XX, page 73, of the Plan defines the administrator's authority to determine eligibility benefits and/or to construe or interpret the terms of the Plan as follows:

> **Article XX. GENERAL PROVISIONS –**
> **GROUP/POLICYHOLDER AND MEMBERS**
>
> * * *
>
> **A. The Benefit Plan**
>
> * * *
>
> 4. The Company [BCBSLA] has full discretionary authority to determine eligibility for Benefits and/or to construe the terms of this Benefit Plan.[13]

## LAW AND ARGUMENT

This honorable court's Amended ERISA Case Order (Doc. 32) required Plaintiff to file his Submission Brief by November 6, 2020.  Plaintiff has not filed his brief. "A

---

[10] (AR 227-270).
[11] MRIA is an IRO. Pursuant to regulations of the Louisiana Department of Insurance (LDI) and *La. R.S. 22:2391, et seq*., and federal law. IROs, such as MRIA, are randomly allotted by the LDI to review internal decisions made by medical insurers in response to member appeals.  MRIA is not affiliated with BCBSLA in any manner.
[12] (AR 271-275).
[13] (AR 091).

claimant under section 1132(a)(1)(B) has the initial burden of demonstrating entitlement to benefits under an ERISA plan...." [14].  Therefore, Plaintiff's suit should be dismissed with prejudice as he cannot meet his burden of demonstrating his entitlement to benefits under the Plan as he did not file a brief.

However, out of an abundance of caution, BCBSLA will address the merits of this case.

### A.   BCBSLA did not Abuse its Discretion

The Plan grants BCBSLA "***full discretionary authority***" to determine the eligibility for benefits and/or to construe and interpret the terms of the Plan."[15]

Under ERISA, when the language of an ERISA plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.[16]  The administrator's decision must be supported by substantial evidence in the administrative record to avoid being reversed by the Court.[17]  Substantial evidence is "that which a reasonable mind might accept as sufficient to support a conclusion."[18]

The Fifth Circuit applies "a two-step process when conducting [an] abuse of discretion review."[19]  First, a court must determine the legally correct interpretation of the plan.[20]  To determine whether the administrator's interpretation of the plan was

---

[14] *Koch v. Metropolitan Life Insurance Company*, 425 F.Supp.3d 741, 745 (N.D.Tex., 2019) *citing Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993).
[15] (AR 091).
[16] *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La.2007); citing *High v. E–Systems, Inc.*, 459 F.3d 573 (5th Cir.2006); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir.1999).
[17] *Id*. at 422-423.
[18] *Id*.
[19] *Stone v. Unocal Termination Allowance Plan*, 570 F.3d 252, 257, (5th Cir.2009).
[20] *Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 269-70 (5th Cir.2004).

legally correct, the key factor a court must consider is "whether the administrator's interpretation was consistent with a fair reading of the plan."[21]   If the administrator's interpretation of the plan was legally correct, "the inquiry ends and there is no abuse of discretion."[22]

Only if the court finds the administrator did not give the plan the legally correct interpretation will it determine whether the administrator's decision was an abuse of discretion.[23]   In doing so, the Court "must inquire only whether the record adequately supports the administrator's decision; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim '***without some concrete evidence in the administrative record***.'"[24]   Abuse of discretion is synonymous with the arbitrary and capricious standard.[25]   A decision is arbitrary and capricious only if "made without a rational connection between the known facts and the decision or between the found facts and the decision."[26]   Ultimately, the "review of the administrator's decision need not be particularly complex or technical; it need only assure

---

[21] *Id*.   Other factors the court considers are "whether the administrator has given the plan a uniform construction…and…any unanticipated costs resulting from different interpretations of the plan." *Id; see also Stone,* 570 F.3d at 258.

[22] *Stone,* 570 F.3d at 258; *see also Ellis,* 394 F.3d at 269-70 and *Tolson  v. Avondale Industries, Inc.*, 141 F.3d 604, 608 (5th Cir.1998)("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.").

[23] *Id.*

[24] *Truitt v. Unum Life Ins. Co. of Am.,* 729 F.3d 497, 513-14 (5th Cir.2013), cert. denied, -- U.S. -- 134 S.Ct. 1761, 188 L.Ed.2d 593 (2014)(holding that record contained "concrete evidence" supporting denial of plaintiff's ERISA disability claim, including e-mails showing "that [plaintiff's] travel schedule was rigorous" and surveillance video showing plaintiff "walking, driving, and bending down, and lifting and carrying boxes, bags, coolers, pumpkins, and a dog"); *Gooden v. Provident Life & Accident Insurance Co.,* 250 F.3d 329, 333 (5th Cir.2001) (quoting *Vega*, 188 F.3d at 302)(emphasis added).   Under the law of this circuit, in an ERISA matter, when assessing factual questions the court is constrained to the administrative record considered by the administrator in making the challenged decision.  *See Vega,* 188 F.3d at 299-300.

[25] *Wade*, 493 F.3d at 540.

[26] *Meditrust,* 168 F.3d at 215 (quoting *Bellaire Gen. Hosp.*, 97 F.3d at 828-29).

that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end."[27]

### 1. BCBSLA's Interpretation of the Plan was Legally Correct

To determine whether the administrator's interpretation of the Plan was legally correct, the key factor a court must consider is "whether the administrator's interpretation was consistent with a fair reading of the plan."[28]  If the administrator's interpretation of the plan was legally correct, "the inquiry ends and there is no abuse of discretion."[29]

The Plan fully defines "Medically Necessary" at AR 035 as:

Medically Necessary (or Medical Necessity) - Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

**A.** in accordance with nationally accepted standards of medical practice;

**B.** clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and

**C.** not primarily for the personal comfort or convenience of the patient, or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

For these purposes, "nationally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community,

---

[27] *Vega,* 188 F.3d at 297.

[28] *Id.*   Other factors the court considers are "whether the administrator has given the plan a uniform construction…and…any unanticipated costs resulting from different interpretations of the plan." *Id; see also Stone,* 570 F.3d at 258.

[29] *Stone,* 570 F.3d at 258; *see also Ellis,* 394 F.3d at 269-70 and *Tolson  v. Avondale Industries, Inc.*, 141 F.3d 604, 608 (5th Cir.1998)("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.").

Physician Specialty Society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.

The Plan further provides in Article XVII as follows:

B. Any of the limitations and exclusions listed in this Benefit Plan may be deleted or revised as shown in the Schedule of Benefits. Unless otherwise shown as covered in the Schedule of Benefits, the following are not covered, REGARDLESS OF CLAIM OF MEDICAL NECESSITY:

1. Services, treatments, procedures, equipment, drugs, devices, items or supplies that are not **Medically Necessary**. The fact that a Physician or other Provider prescribes, orders, recommends or approves a service or supply, or that a court orders a service or supply to be rendered, does not make it Medically Necessary. (Emphasis Added)[30]

On October 10, 2018, M. D. Anderson Cancer Center sent a Preauthorization request to BCBSLA .[31] On October 12, 2018, AIM on behalf of BCBSLA forwarded a letter to Salim denying authorization for *Proton Treatment Delivery, Simple* as not medically necessary.[32] On October 12, 2018, BCBSLA also denied authorization for *Special Radiation Treatment Procedure and Guidance for Localization of Target Delivery of Radiation Treatment Delivery* as not medically necessary.[33] The October 12 denial was made by Dr. Dierdre Barfield, a Senior Medical Director at BCBSLA who found:

We cannot approve this request for a Special Treatment Procedure. This is used when the doctor performing the radiation therapy uses extra steps when planning the treatment. It is used only in certain situations. It is used if you will also be getting intravenous chemotherapy with radiation. Your doctor did not tell us that this is the case for you. For this reason, this procedure is not medically necessary for you.

---

[30] (AR 055).
[31] (AR 120-129).
[32] (AR 130-134).
[33] (AR 135-144).

In short, BCBSLA determined that the Proton Beam Therapy for Salim was not medically necessary because it is a special type of radiation treatment that is used to treat head and neck cancer when the area has been radiated before. The facts in the administrative record show that Salim had not had his neck radiated before the original pre-authorization request.[34]   Dr. Barfield used the AIM Clinical Appropriateness Guidelines in making this determination.[35]

On October 20, 2018, BCBSLA responded to an appeal filed by Salim on October 17, 2020 and upheld the denial on appeal as the treatment was not medically necessary.[36] Sanath Kumar, MD a board certified radiation oncologist with AllMed Health Management ("AllMed"),[37] in upholding the denial found that:

> "The policies for Image Guidance in Radiation Oncology and Special Treatment Procedure and Special Physics Consult do not apply as image guidance for proton beam therapy will not be utilized and there is no extra time, effort, or resources associated with complex radiation therapy required. The AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer….Although there are several trials currently underway, there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers. Therefore, the requested proton beam therapy is not medically necessary for this patient based on the clinical documentation and the policy criteria."

---

[34] (AR 131)

[35] (AR 131-132).

[36] (AR 193-219).

[37] AllMed is an URAC accredited IRO who conducts both external reviews of medical decisions made by medical insurers and conducts internal reviews of medical decision made by medical insurers like BCBSLA in this case. URAC is a non-profit organization that helps promote health care quality by providing accreditation for companies and organization that offer medical services.

October 30, 2018, MD Anderson Proton Therapy Center instituted a second level appeal by requesting an urgent external review by an IRO[38].  On October 31, 2018, MRIA, the IRO, also found that PBT was not medically necessary in the case of Salim. MRIA specifically found that the "AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer."[39]

The Plan's language is clear and unambiguous that it does not provide benefits for treatments like PBT that are not medically necessary. BCBSLA's interpretation was a fair reading of the plan, as it relied upon nationally accepted standards as enunciated in both the initial denial, the appeal decision and the IRO decision.  BCBSLA's interpretation that PBT is not medically necessary within the definition of that term in the Plan for Salim is supported by concrete evidence in the Administrative Record and therefore is a fair reading of the Plan.

### 2.     BCBSLA'S Denial was not an Abuse of Discretion.

While BCBSLA contends that the Court's analysis stops here because the interpretation of the Plan was legally correct, in an abundance of caution, BCBSLA moves to the second step of the Fifth Circuit's analysis and addresses whether the denial was an abuse of discretion.

BCBSLA's denial of the preauthorization request for Salim's treatment of neck cancer was based on concrete evidence in the Administrative Record. The Administrative

---

[38] Please See Footnote 10 for definitions of an IRO and the external review process.
[39] (AR 272).

Record is replete with information from which one could rationally conclude that the treatment at issue was not a covered benefit as PBT is not medically necessary.[40]

Therefore, the pre-authorization request at issue does not meet the definition of medical necessity in the Plan.[41]  BCBSLA acted rationally and made a reasonable decision based on all evidence contained in the Administrative Record and a fair reading of the Plan language in denying Salim's claim for health insurance benefits. There is a clear, rational connection between the known facts in the Administrative Record and the decision to deny Salim's claim for benefits.[42]

In a similar case[43], the plaintiff filed suit against his employee benefit plan for denying a preauthorization for proton beam therapy to treat his prostate cancer.  The Plan in *Baxter* had a similar exclusion as the plan in this matter. The Baxter Plan provided that:

> "The Plan also includes an exclusion for services that are
> 'Not Medically Necessary[44].' That provision excludes:
> Services and supplies that are not Medically Necessary for the treatment of an Illness or Injury, except for preventative care benefits specifically provided under the Contract."

---

[40] (AR 131-132; 277)

[41] (AR 017).

[42] (AR130-144, 193-219, 272).

[43] *Baxter v. MBA Group Ins. Trust Health and Welfare Plan*, 958 F.Supp.2d 1223, 1225 (W.D.Wash.,2013).

[44] "The Plan defines "Medically Necessary or Medical Necessity" as follows: Health care services or supplies that a Physician or other health care Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an Illness, Injury, disease or its symptoms, and that are:
• In accordance with generally accepted standards of medical practice;
• Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's Illness, Injury or disease, and;
• Not primarily for the convenience of the patient, Physician or other health care Provider, and not more costly than an alternative service or sequence of services or supply at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's Illness, Injury or disease." (Emphasis Added). *Baxter* at 1228-1229.

The Plan Administrator in *Baxter* found that "Charged-particle irradiation with proton beams is considered not medically necessary in patients with clinically localized prostate cancer because the clinical outcomes with this treatment have not been shown to be superior to other approaches including intensity modulated radiation therapy (IMRT) or conformal radiation therapy. Charged-particle irradiation with proton beams is more costly than other alternatives for treatment and is therefore not medically necessary."[45]

Similarly, BCBSLA found in this matter that PBT is not considered medically necessary in adult patients with head and neck cancer…. Although there are several trials currently underway, there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers."[46] As in Baxter, there was not clinical tests that show PBT is medically superior in treating cancer to IMRT, and the denial by BCBSLA was not an abuse of discretion.

Therefore, Salim cannot establish that BCBSLA's decision to deny the pre-authorization for PBT as an excluded benefit was an abuse of discretion. The evidence in the administrative record shows that BCBSLA and two independent medical experts in the field of radiation oncology found the denial of the pre-authorization for PBT was proper. Therefore, BCBSLA is entitled to judgment dismissing Plaintiff's claims with prejudice.

---

[45] *Baxter* at 1225.
[46] (AR 193-219).

**<u>CONCLUSION</u>**

Based on a fair reading of the plan and the evidence in the administrative record, BCBSLA did not abuse its discretion in denying Salim's preauthorization request for PBT to treat neck cancer.

Plaintiff's case should be dismissed with prejudice.

Respectfully Submitted:

By: */s/ Douglas M. Chapoton*_____
   Richard A. Sherburne (LA Bar No. 02106)
   Jessica W. Chapman (LA Bar No. 31097)
   Douglas M. Chapoton (LA Bar No. 25616)
   5525 Reitz Avenue (70809)
   Post Office Box 98029
   Baton Rouge, Louisiana 70898-9029
   Telephone: (225) 295-2116
   Facsimile: (225) 297-2760
   Richard.Sherburne@bcbsla.com
   Jessica.Chapman@bcbsla.com
   Douglas.Chapton@bcbsla.com

   *Attorneys for Defendant Louisiana Health Service &*
   *Indemnity Company, d/b/a Blue Cross and Blue*
   *Shield of Louisiana*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by filing the same in this Court's CM/ECF system on this 4th day of December, 2020.


_____/s/ Douglas M. Chapoton_____
Douglas M. Chapoton