UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT L. SALIM,<br>Plaintiff | CIVIL DOCKET NO. 1:19-CV-00442 |
| VERSUS | DISTRICT JUDGE JOSEPH |
| LOUISIANA HEALTH SERVICE<br>& INDEMNITY CO. D/B/A BLUE<br>CROSS & BLUE SHIELD OF<br>LOUISIANA,<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Plaintiff Robert L. Salim ("Salim") filed a complaint pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") against his group health benefits insurer, Louisiana Health Service & Indemnity Co. d/b/a Blue Cross & Blue Shield of Louisiana ("BCBSLA"). Salim seeks coverage for photon beam radiation therapy ("PBT")–a cancer treatment–that had been denied by BCBSLA.

Because Salim showed that PBT was a nationally accepted standard of care for advanced head and neck cancer in 2018, BCBSLA abused its discretion in finding Salim's PBT treatment was not medically necessary.

I.  **Background**

   A.  **Procedural History**

Salim filed his ERISA complaint in the Louisiana Tenth Judicial District Court, for payment of healthcare insurance benefits pursuant to a group health

insurance policy issued to Robert L. Salim, APC, by BCBSLA.[1] Salim alleged state law claims for payment of his insurance claims, general damages, penalties, legal interest, and attorney fees.

Defendant removed, alleging jurisdiction pursuant to ERISA. ECF No. 1. Defendant then answered and filed the administrative record.[2] ECF Nos. 8, 27.

The parties jointly stipulated that ERISA governs Salim's health benefit plan, preempts his state law claims, and vests discretionary authority in BCBSLA to determine eligibility for benefits and construe the plan. ECF No. 24. The parties filed briefs. ECF Nos. 34, 38. The central issue is whether PBT is medically necessary for the treatment of advanced head/neck cancer.

B. <u>Administrative Record</u>

Salim, then 67 years old, was referred to M.D. Anderson Cancer Center by his otolaryngologist for a consultation on an oropharyngeal lesion. ECF No. 27 at 128. On September 21, 2018, an MRI of his neck showed a 2.2 cm right vallecular mass arising from the right lingual tonsil or posterior third of his tongue, with metastatic involvement of the lymph nodes. ECF No. 27 at 129. On September 30, 2018, a CT scan of Salim's neck revealed a right tongue base tumor projecting into the adjacent right vallecula (2.2 cm.), a necrotic right jugulodigastric metastatic lymph node (1.6 cm.), a right posterior jugular metastatic lymph node (2.2 cm. X 4

---

[1] This action was originally filed in the Louisiana Tenth Judicial District Court.

[2] Plaintiff failed to file a statement regarding the completeness of the administrative record, as required by the ERISA Case Management Order. ECF No. 19.

cm. high), and a large stone along the submandibular gland duct (1.6 cm X 1.2 cm.). ECF No. 27 at 132. Salim was diagnosed with: neoplasm of base of tongue; cancer of oropharynx; and secondary and unspecified malignant neoplasm of lymph nodes of head, face, and neck. ECF No. 27 at 256.

On October 10, 2018, a preauthorization request for treatment was sent by the M.D. Anderson Cancer Center Proton Therapy Center. ECF No. 27 at 124-33. On October 12, 2018, AIM Specialty Health ("AIM"), an independent company that assists BCBSLA in the management of its health benefits plans, denied preauthorization for proton beam treatment delivery (simple) ("PBT") on the basis that PBT is used to treat head and neck cancer only when the same area has been radiated before. ECF No. 27 at 135. Because Salim had not had radiation to that area before, PBT was deemed not medically necessary and, therefore, not covered. ECF No. 27 at 135-36, 150.

AIM denied Salim's appeal of that decision on October 12, 2018, stating it was relying on the 2018 AIM Clinical Appropriateness Guidelines–Radiation Oncology-Proton Beam Therapy (page 9). An AIM physician, on behalf of BCBSLA, reviewed the available information and denied Salim's request for Proton Beam Boost special radiation treatment because his head and neck had not been radiated before and, therefore, it was not medically necessary under the AIM Guideline. ECF No. 27 at 150. The Guideline states only that "Proton Beam Therapy is not

3

medically necessary for the treatment of all other conditions including: . . . head and neck cancer . . . ."  ECF No. 27 at 184.

On October 12, 2018, AIM also denied Salim preauthorization for special radiation treatment procedure because it is only used when the patient is also getting intravenous chemotherapy with radiation, and Salim's physicians had not stated that he would be receiving chemotherapy.  ECF No. 27 at 140.  Therefore, the special radiation treatment procedure was not medically necessary.  ECF No. 27 at 140-41.

On October 12, 2018, AIM denied Salim preauthorization for guidance for localization of target delivery of radiation treatment delivery because it is only used when in cases of head and neck cancer in which "a certain type of radiation (intensity modulated radiation therapy ("IMRT")) is indicated."  ECF No. 27 at 145.  Because Salim's physicians did not indicate that Salim would be receiving IMRT, it was also deemed not medically necessary.  ECF No. 27 at 145.

Also on October 12, 2018, AIM notified Salim that his request for 2D/3D conformal-external beam radiation therapy ("EBRT") and special radiation physics consult had been approved.  ECF No. 27 at 150, 153.

On October 15, 2018, a PET/CT scan showed: (1) a hypermetabolic mass within the right base of the tongue adjacent to the right side of the epiglottis/epiglottic vallecula, with an SUV of 14.8; (2) a 2.5 x. 2.4 cm right level III cervical node with an SUV of 7.0, with necrosis and several smaller nodes inferiorly

(such as a .8 x .5 cm node with an SUV of 1.6, and .6 x .6 node with an SUV of 1.9); (3) a 1.5 x 1.3 cm right level II cervical node with an SUV of 6.9; (4) a 1.5 x .9 cm right level III cervical node with an SUV of 5.3; and (5) a .8 x .6 cm right anterior cervical/retropharyngeal node with an SUV of 5.5.  ECF No. 27 at 262.  The diagnosis was hypermetabolic mass within the right tongue base consistent with the known primary and hypermetabolic right level II and III cervical nodes, as well as FDG-avid right retropharyngeal/anterior cervical node consistent with metastases.  ECF No. 27 at 263.

On October 16, 2018, Juanita Rodriguez (account manager, sales and marketing) advised Salim to have his doctor call BCBSLA, request another review, and provide BCBSLA with the additional information needed to get his procedures approved.  ECF No. 27 at 156.

On October 18, 2018, Salim wrote to ask Rodriguez for the name(s) of the person(s) responsible for the denial of his treatment.  ECF No. 27 at 161.  BCBSLA treated Salim's letter as an expedited appeal.  ECF No. 27 at 159-67.

Dr. Samath Kumar, a physician-advisor board-certified in radiation oncology, reviewed Salim's case and found PBT was not medically necessary.  Salim's appeals were denied on October 20, 2018.  ECF No. 27 at 197-210.  BCBSLA explained:

> The policies for Image Guidance in Radiation Oncology and Special Treatment Procedure and Special Physics Consult do not apply as image guidance for proton beam therapy will not be utilized and there is no extra time, effort, or resources associated with complex radiation therapy required. The AIM guidelines: Radiation Oncology,

5

> Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer . . . . Although there are several trials currently underway, there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers. Therefore, the requested proton beam therapy is not medically necessary for this patient based on the clinical documentation and the policy criteria.

ECF No. 27 at 197, 227.

On October 30, 2018, MD Anderson Cancer Center again requested expedited/urgent consideration of Salim's request for PBT. Dr. Clifton Fuller, Salim's oncologist and an Assistant Professor at the University of Texas Department of Radiation Oncology, explained that Salim did not need "routine treatment of head and neck cancer," but rather treatment of a "massive oral disease." ECF No. 27 at 234, 241. Dr. Fuller stated the goal of using PBT on Salim was to decrease short term risk for a feeding tube by 50% and long-term complications such as permanent hearing loss, swallowing dysfunction, and neurocognitive deficits. ECF No. 27 at 234.

Salim's cancer had grown to a 2.2 cm x 2 cm tumor at the right base of his tongue, and extensive bi-lateral nodal disease: 2.5 x 2.4 cm right level III; 1.5 x 1.3 cm right level II, 1.5 x .9 cm right level III; and a superior .8 x .6 cm right retropharyngeal node at the skull base interface. ECF No. 27 at 235. Dr. Fuller stated that Salim would receive concurrent chemotherapy and right dose radiation (+70Gy) to the primary disease. ECF No. 27 at 235. Because the target

6

encompassed a majority of the oral cavity, bi-lateral modal disease, and the skull base, multiple normal tissues and organs were at risk, mainly: brain; brain stem; sinus; all optical hardware; mucosa; cochlea; oral cavity; parotid glands; esophagus; larynx; vocal cords; pharyngeal constrictors; and spinal cord. ECF No. 27 at 235. The PBT radiation would spare Salim's oral and optical structures, including: swallowing function; speech; salivary production; vision; and neurocognitive preservation. ECF No. 27 at 235.

Dr. Fuller noted that BCBSLA's medical policy for PBT on head and neck cancer was outdated and incomplete–of "nearly 50 reference articles used to support the denial, only three relate to head and neck cancer." ECF No. 27 at 235. Those three articles from AIM's guideline specifically endorse the use of PBT. ECF No. 27 at 235. Dr. Fuller also pointed out that AIM's most recent denial of Salim's PBT was based on the 2017 American Society for Radiation Oncology ("ASTRO") Model Policy (attached to his letter), which was updated in 2017 to specifically include PBT as both appropriate and medically necessary for advanced head and neck cancer that involved the base of the skull – Salim's diagnosis. ECF No. 27 at 236, 270-71.

Finally, Dr. Fuller cites the 2017 National Comprehensive Cancer Network ("NCCN") Head and Neck Guidelines (attached to his letter) that were also revised to declare PBT as medically necessary and the standard of care for head and neck patients. ECF No. 27 at 236, 273-74. The NCCN Head and Neck Guidelines are

7

not included in AIM's policy guidelines. ECF No. 27 at 236. Dr. Fuller states that the FDA,[3] CMS,[4] ASTRO, and NCCN agree that PBT is not experimental and investigational; is medical necessary and superior for treatment of head and neck cancers; and is supported and recommended by the NCCN and ASTRO. ECF No. 27 at 240. Dr. Fuller cites 17 evidence-based publications supporting the use of proton therapy for head and neck cancer, which are dated from 2013-2016. ECF No. 27 at 243-44.

Dr. Fuller found that Salim meets three of the four medical necessary indications listed by both ASTRO and NCCN guidelines support the use of proton beam therapy ("PBT") for tumors when curative intent is sought for case such as Salim's, to spare important normal organs at risk from significant dose. ECF No. 27 at 236. PBT would reduce the radiation doses received (as compared with photons): to Salim's oral cavity by 70.5%, reducing the risk of nutritional interventions, dry mouth, difficulty swallowing, mouth sores, and feeding tube insertion; to Salim's spinal cord by 46.5%, reducing the risk of peripheral nerve damage; to Salim's esophagus by 26.1%, reducing the risk of severe pain, substernal burning sensation, odynophagia, dysphagia, and possible fistula; and to Salim's larynx by 15.6%, decreased the risk of laryngeal edema resulting in difficulty breathing, speaking, and swallowing. ECF No. 27 at 239.

---

[3] Food and Drug Administration.

[4] Centers for Medicare and Medicaid Services.

Dr. Fuller concluded that PBT is medically necessary to treat Salim's advanced squamous cell carcinoma of the base of the tongue, with skull base involvement, because: (1) PBT is the only option for increased locoregional control and overall survival; (2) PBT offers improved survivability; (3) PBT is considered medically necessary by the NCCN and ASTRO as standard of care, and these guidelines are considered the industry standard for directing care for Salim's advanced head and neck cancer with skull base involvement. ECF No. 27 at 240-41. Finally, Dr. Fuller noted that PBT is FDA-approved, not experimental and investigational, and has been proven in the treatment of head and neck cancer. ECF No. 27 at 241.

The ASTRO Model Policies show PBT is indicated where there is medical necessity, and that Salim meets three of the four medical necessity criteria: (1) the targe volume is in close proximity to one or more critical structures, and a steep dose gradient outside the target must be achieved to avoid exceeding the tolerance dose to the critical structures; (2) a decrease in the amount of dose inhomogeneity in a large treatment volume is require to avoid an excessive dose "hotspot" with in the treated volume to lessen the risk of excessive early or late normal tissue toxicity; and (3) a photon-based technique would increase the probability of clinically meaningful normal issue toxicity by exceeding an integral dose-based metric associated with toxicity. ECF No. 26 at 270. The ASTRO Model Policies also show that a disease site that frequently supports the use of PBT includes tumors that

9

approach or are located at the base of the skull, and advanced and/or unresectable head and neck cancers.  ECF No. 26 at 270-71.

National Comprehensive Cancer Network ("NCCN") Guidelines Version 2.2017–Head and Neck Cancers state that "[a]dvanced radiation therapy technologies such as IMRT, GIRT (image-guided radiation therapy) and PBT may offer clinically relevant advantages in specific instances to spare important organs at risk (OARs) such as the brain, brain stem . . . optic chiasm and nerves, . . . retina, lacrimal glands, cornea, spinal cord, . . . mucosa, salivary glands, bone (skull base and mandible), . . . larynx and esophagus; and decrease the risk for late, normal tissue damage while still achieving the primary goal of local tumor control.  The demonstration of significant dose-sparing of these OARs reflects best clinical practice."  ECF No. 27 at 273.  The NCCN Guidelines further state that "[a]chieving highly conformal dose distributions is especially important for patients whose primary tumors are periocular in location and/or invade the orbit, skull base, and/or cavernous sinus/; extend intracranially or exhibit extensive perineural invasion; and who are being treated with curative intent and/or who have long life expectancies following treatment."  ECF No. 27 at 274.

Dr. Fuller's letter and attachments were submitted to BCBSLA on October 30, 2018.  On October 31, 2018, the Medical Review Institute of America, L.L.C., notified Salim that it had received the assignment on October 30, 2018 and conducted the external review on October 31, 2018.  ECF No. 27 at 275-78.  The

review was conducted by an unnamed physician reviewer who is a radiation oncologist, but who apparently has no experience in proton beam therapy. The reviewer noted that Salim had been diagnosed with Stage IV squamous cell carcinoma. ECF No. 27 at 277. However, the reviewer found PBT was still in trial and not yet recommended, citing references dated 2012, 2011, 2014, and 2016. The reviewer upheld the denial of the request for treatment on the basis that the "long term safety and efficacy" of PBT was not yet established "as a standard treatment option for patients with head and neck cancer," and because Salim did "not have significant macroscopic disease involvement in the region of the skull base according to the documents submitted for review." ECF No. 27 at 277. The reviewer cited four references concerning proton therapy, three of which specifically addressed proton radiation therapy for head and neck cancer, dated 2011, 2014, and 2016, to support the decision. ECF No. at 277.

Despite the denial of coverage, Salim received PBT treatment for his cancer and now seeks recovery of the billed amounts from BCBSLA.

II. <u>Law and Analysis</u>

Plaintiff contends BCBSLA abused its discretion in finding PBT was not medically necessary for his head/neck cancer.

BCBS argues: (1) Salim's suit should be dismissed because his brief was filed late; and (2) it did not abuse its discretion in denying PBT for Salim.

11

### A. Blue Cross had full discretionary authority.

In this case, the parties jointly stipulated that the Benefit Plan vests the Plan Administrator, as well as BCBSLA, with full discretionary authority to determine eligibility for benefits and construe the terms of the Plan. ECF No. 24. The parties apparently confused the Plan Administrator with BCBSLA. The Benefit Plan actually names "The Group" (i.e. the policyholder) as the Plan Administrator for purposes of ERISA. ECF No. 27 at 37, 111. However, the Benefit Plan additionally states that BCBSLA "has full discretionary authority to determine eligibility for Benefits and/or to construe the terms of this Benefit Plan." ECF No. 27 at 95.

Therefore, it is BCBSLA, and not the Plan Administrator (the Group), that has full discretionary authority to make eligibility determinations.[5]

### B. Salim was granted leave to file an out-of-time brief.

BCBSLA contends Salim's brief should be rejected as untimely. Because the Court granted Plaintiff leave to file his out-of-time brief (ECF No. 37), BCBSLA's argument is moot.

---

[5] ERISA defines the term "administrator," 29 U.S.C. § 1002(16)(A), to mean: (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary [of Labor] may by regulation prescribe. ERISA defines "plan sponsor," 29 U.S.C. § 1002(16)(B)(i), to mean: "the employer in the case of an employee benefit plan established or maintained by a single employer."

### C. BCBSLA abused its discretion in finding Salim's PBT was not medically necessary.

ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," and "to protect contractually defined benefits." *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citing *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 148 (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90 (1983)); 29 U.S.C. § 1001.

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed under an abuse of discretion standard of review when, as here, the Plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.*, 489 U.S. at 115 (1989); *see also Meditrust Financial Services Corp. v. The Sterling Chemicals, Inc.,* 168 F.3d 211, 213 (5th Cir. 1999). A plan administrator also has discretion to find facts related to coverage. A court reviews an administrator's findings of fact under an abuse-of-discretion standard. *See Love v. Dell, Inc.*, 551 F.3d 333, 336 (5th Cir. 2008); *see also Stemme v. Blue Cross Blue Shield of Kansas City,* 2013 WL 12362335, at *6 (N.D. Tex. 2013).

Therefore, the Court reviews both BCBSLA's factual finding as to medical necessity and its construal of the plan's terms for abuse of discretion. *See Stemme*, 2013 WL 12362335, at *6 (the Plaintiff disputed BCBS's factual finding that PBT was not medically necessary).

Review for abuse of discretion equates to a ruling on whether the administrator's determination was "arbitrary and capricious." *See. Love v. Dell, Inc.,* 551 F.3d 333, 336 (5th Cir. 2008). Under an arbitrary and capricious standard, BCBSLA's decision must be affirmed if it is supported by substantial evidence. *See Meditrust Financial Services Corp.,* 168 F.3d at 213; *see also Love,* 551 F.3d at 336. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Meditrust Financial Services Corp.,* 168 F.3d at 215; *see also Love,* 551 F.3d at 336.

This case does not present issues as to Salim's eligibility for benefits, or BCBSLA's construction of the terms of the Benefits Plan. Instead, Salim contends BCBSLA abused its discretion in finding that PBT is not the accepted standard of care for his head and neck cancer – a fact related to coverage.[6] *Compare Stemme*, 2013 WL 12362335, at *6.

---

[6] BCBSLA argues the Court should apply the test for abuse of discretion as to construction of the terms of the Plan. See *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 373–74 (5th Cir. 2016); *Hargrave v. Commonwealth General Corporation's Long Term Disability Plan*, 430 Fed. Appx. 256, 260 (5th Cir. 2011); *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257-58 (5th Cir. 2009). BCBSLA argues that, because BCBSLA's construction of the terms of the Plan is legally correct, the Court cannot find BCBSLA abused its discretion. However, Salim does not dispute BCBSLA's construction of the Plan. Instead, he disputes BCBSLA's factual finding that PBT was not medically necessary. Therefore, the test for a legally correct construction of the Plan is not applicable in this case. *See Love,* 551 F.3d at 336; *Stemme*, 2013 WL 12362335, at *6-*7.

Salim's cancer with nodal disease had metastasized and was advanced. ECF No. 27 at 241, 251, 255, 263. Salim's Benefit Plan defines "medically necessary" in Article II, Definitions, as (ECF No. 27 at 39):

> **Medically Necessary** (or Medical Necessity) - Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
>
> > A. in accordance with nationally accepted standards of medical practice;
> >
> > B. clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and
> >
> > C. not primarily for the personal comfort or convenience of the patient, or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.
>
> For these purposes, **nationally accepted standards** of medical practice means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician Specialty Society recommendations, and the views of Physicians practicing in relevant clinical areas, and any other relevant factors.

On October 18, 2018, BCBSLA's first physician-reviewer, Dr. Kumar, stated PBT was not medically necessary because "there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers." That physician

15

reviewer also cited the AIM guidelines for Radiation Oncology, Proton Beam Therapy, which stated that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer who have not previously had radiation therapy.

Dr. Fuller presented peer-reviewed evidence and specialty society policy statements to show that PBT was the current nationally-accepted standard of care for advanced head and neck cancer. Dr. Fuller showed that most of the evidence relied on by BCBSLA's reviewer appears was either outdated or did not pertain to the treatment of head and neck cancer.

BCBSLA's final physician-reviewer cited four articles to support the denial of coverage, only three of which dealt with head and neck cancer, and two of those were old. The final reviewer acknowledged the policy statements from NCCN and ASTRO attached to Dr. Fuller's letter, but stated those recommendations were "based on a lesion with significant involvement of structures at the skull base," but that Salim "does not have significant macroscopic disease involvement in the region of the skull base according to the documents submitted for review." ECF No. 27 at 278.

The final reviewer mis-stated the NCCN guidelines as relying solely on skull base involvement. The NCCN guidelines actually recommends PBT "for patients whose primary tumors are periocular in location and/or invade the orbit, skull base, and/or cavernous sinus; extend intracranially or exhibit extensive perineural

16

invasion; and who are being treated with curative intent . . . Nonrandomized single institution clinical reports and systematic comparisons demonstrate safety and efficacy of proton beam therapy in the above-mentioned specific clinical scenarios." ECF No. 27 at 274.

ASTRO guidelines recommend PBT for tumors that approach or are located at the base of the skull, and for advanced and/or unresectable head and neck cancers. ECF No. 27 at 270-271. In those instances, the patient must meet one of four medical necessity requirements, of which Dr. Fuller stated Salim met three.[7]

Therefore, the final reviewer's statement that Salim's cancer did not meet the requirement of "significant macroscopic involvement of the skull base" is a misstatement of the NCCN policy, and does not support a finding that PBT was not medically necessary for treatment of Salim's cancer.

Salim has carried his burden of proving that PBT was a nationally-accepted standard of care for advanced head and neck cancer in 2018. Because substantial evidence does not support BCBSLA's finding that PBT was not medically necessary

---

[7] (1) The target volume is in close proximity to one or more critical structures and a steep dose gradient outside the target must be achieved to avoid exceeding the tolerance dose to the critical structures; (2) a decrease in the amount of dose inhomogeneity in a large treatment volume is required to avoid an excessive dose "hotspot" within the treated volume to lessen the risk of excessive early or late normal tissue toxicity; and (3) a photon-based technique would increase the probability of clinically meaningful normal tissue toxicity by exceeding an integral dose-based metric associated with toxicity. ECF No. 27 at 270. The fourth requirement is the only one recognized by BCBSLA/AIM's guideline – that the same or an immediately adjacent area has been previously irradiated, and the dose distribution within the patient must be sculpted to avoid exceeding the cumulative tolerance dose of nearby normal tissue. ECF No. 27 at 270.

for treatment of Salim's cancer, BCBSLA abused its discretion in denying coverage for Salim's PBT.

## III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that judgment be entered in favor of Salim[8] and against BCBSLA on the issue of coverage for Salim's PBT cancer treatments, and that BCBSLA be ORDERED to pay Salim's medical bills related to proton beam therapy.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

---

[8] Where the denial is not supported by concrete evidence in the record, granting summary judgment for the plaintiff is appropriate, even if the plaintiff has not moved for summary judgment. *See Hamsher v. North Cypress Medical Center Operating Co., Ltd.*, 620 Fed. Appx. 236, 240–41 (5th Cir. 2015) (citing *Robinson v. Aetna Life Insurance Co.,* 443 F.3d 389, 396-97 (5th Cir. 2006)).

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __13th__ day of June, 2022.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge