# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **ROBERT L. SALIM,** | * | **CIVIL ACTION NO. 1:19-cv-00442** |
| *Plaintiff* | * | |
| **VERSUS** | * | |
| | | **JUDGE DEE D. DRELL** |
| | * | |
| **LOUISIANA HEALTH SERVICE & INDEMNITY CO.,** | * | |
| | | **MAGISTRATE JUDGE JOSEPH** |
| *Defendant* | * | **H. L. PEREZ-MONTES** |

\*   \*   \*   \*   \*   \*

## DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S
## <u>REPORT AND RECOMMENDATION</u>

Respectfully Submitted:

By:   */s/ Douglas M. Chapoton*
Richard Sherburne, Jr. (LA Bar No. 02106)
Jessica W. Chapman (LA Bar No. 31097)
Douglas M. Chapoton (LA Bar No. 25616)
5525 Reitz Avenue (70809)
Post Office Box 98029
Baton Rouge, Louisiana 70898-9029
Telephone:   (225) 295-2116
Facsimile:   (225) 297-2760
Richard.Sherburne@bcbsla.com
Jessica.Chapman@bcbsla.com
Douglas.Chapoton@bcbsla.com

*Attorneys for* Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross Blue Shield of Louisiana.

1

# **TABLE OF CONTENTS**

I. LAW AND ARGUMENT ........................................................................................... 4

    A. Federal Rule of Civil Procedure 72(b)(2) ........................................................ 4

    B. Objections to R&R............................................................................................ 4

    C. Objection 1....................................................................................................... 6

    D. Objections 2, 3 and 4 ....................................................................................... 6

    E. Objections 5, 6 and 7....................................................................................... 8

    F. Objection 8 ..................................................................................................... 13

II. CONCLUSION.......................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) *citing Corry v. Liberty Life* ................................................................................................................ 5
*Assurance Co. of Boston,* 499 F.3d 389, 398 (5th Cir.2007) ............................................ 5
*Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La.2007) ............ 6, 8
*C Marziale v. Hartford Life and Accident Ins.*, No. 01–480, 2002 WL 1359639, *4 (E.D.La. Jun. 20, 2002) ................................................................................................ 18
*Chapman v. Prudential Life Ins. Co. of America*, 267 F.Supp.2d 569, 577 (E.D.La.,2003) ..................................................................................................................................... 18
*Ellis*, 394 F.3d at 269-70 ................................................................................................. 11
*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ............................................................................................................................ 9
*Gooden v. Provident Life & Accident Insurance Co.*, 250 F.3d 329 (5th Cir.2001) ........ 14
*High v. E–Systems, Inc.*, 459 F.3d 573 (5th Cir.2006) ................................................. 6, 8
*Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir.1999) ... 6, 8,14
*Roy*, 726 So.2d 1048, 1050, 31,383 La.App. 2 Cir. 1/20/99, 3 (La.App. 2 Cir.,1999) ....... 9
*Ryan by Capria–Ryan v. Federal Express Corp.*, 78 F.3d 123 (3d Cir.1996) .................. 9
*Stone v. Unocal Termination Allowance Plan*, 570 F.3d 252, 257, (5th Cir.2009 ....... 5,11
*Sunbeam–Oster Co. Group Ben. Plan, supra; Ryan by Capria–Ryan, supra* ................ 9
*Tolson  v. Avondale Industries, Inc.*, 141 F.3d 604 (5th Cir.1998) .................................. 11
*Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497 (5th Cir.2013), cert. denied, -- U.S. -- 134 S.Ct. 1761, 188 L.Ed.2d 593 (2014) ................................................................... 14
*Vega*, 188 F.3d at 302 ..................................................................................................... 14
*Wade*, 493 F.3d at 540 .................................................................................................... 14

**Statutes**

§ 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) ......................................................... 7
ERISA ..................................................................................................................... 6, 9, 14
*La. R.S. 22:2391* ............................................................................................................. 15

**Rules**

Federal Rule of Civil Procedure 72(b)(2) ...................................................................... 3, 4
Local Rule 74.1(B) ............................................................................................................ 3
Rule 72(b) ......................................................................................................................... 4

**MAY IT PLEASE THE COURT**:

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 74.1(B), Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross Blue Shield of Louisiana ("BCBSLA") objects to the Magistrate Judge's Report and Recommendation (R&R) (Doc. 39) filed June 13, 2022. BCBSLA objects to the R&R where the Magistrate Judge Joseph H.L. Perez-Montez recommended that judgment be entered for Robert Salim (hereafter referred to as "Plaintiff" or "Salim") on the issue of coverage for Salim's proton beam therapy ("PBT") cancer treatments, and that BCBSLA be ORDERED to pay Salim's medical bills related to proton beam therapy as enumerated and discussed below.

## LAW AND ARGUMENT

### A.  FEDERAL RULE OF CIVIL PROCEDURE 72(B)(2)

In accordance with Fed.R.Civ.P. 72(b)(2), "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Rule 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific objections are made.

### B.  OBJECTIONS

BCBSLA makes the following specific objections to the R&R:

    1.    It is legal error to recommend that judgment be entered in favor of Plaintiff.

2. It is legal error to hold that this case does not present issues as to Salim's eligibility for benefits, or BCBSLA's construction of the terms of the Benefits Plans[1]. (R&R pg. 14)

3. It is legal error to not apply the United States Court of Appeal, for the Fifth Circuit's "a two-step process when conducting [an] abuse of discretion review" of BCBSLA's denial in this matter[2].

4. It is legal error to hold that Plaintiff alleged and had to prove that PBT is the "accepted standard of care of care for his head and neck cancer – a fact related to coverage to be awarded benefits. (R&R pg. 14).

5. It is legal error to hold that BCBSLA abused its discretion in finding that PBT is not the accepted standard of care for his head and neck cancer – a fact related to coverage. (R&R pg. 14).

6. It is legal error to hold that Salim has carried his burden of proving that PBT was a nationally accepted standard of care for advanced head and neck cancer in 2018 and thereby proving that it was medically necessary under the Plan. (R&R 15-16).

7. It is legal error to interpret the definition of "Medically Necessary" beyond the terms of the Plan as interpreted in the R&R. (AR 035) (R&R 15-16).

8. The R&R is replete with factual errors in finding that substantial evidence/concrete evidence[3] does not support BCBSLA's finding that PBT was not

---

[1] PPO Group Care Group Health Benefit Plan, Contract XXXXX1635 ("Plan"), was issued to Robert L. Salim, APC and provided coverage Salim.(AR 18-100).
[2] *Stone v. Unocal Termination Allowance Plan*, 570 F.3d 252, 257, (5th Cir.2009).
[3] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) *citing Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir.2007)

medically necessary for treatment of Salim's cancer, and BCBSLA abused its discretion in denying coverage for Salim's PBT.

C.   **OBJECTION 1**

At FN 8, the Magistrate Judge held as follows:

"Where the denial is not supported by concrete evidence in the record, granting summary judgment for the plaintiff is appropriate, even if the plaintiff has not moved for summary judgment." *See Hamsher v. North Cypress Medical Center Operating Co., Ltd.*, 620 Fed. Appx. 236, 240–41 (5th Cir. 2015) (*citing Robinson v. Aetna Life Insurance Co.*, 443 F.3d 389, 396-97 (5th Cir. 2006)).

As discussed above, BCBSLA's denial of the preauthorization request for Salim's treatment of neck cancer was based on concrete evidence in the AR. The AR is replete with information from which one could rationally conclude that the treatment at issue was not a covered benefit as PBT is not medically necessary.[4]

Plaintiff is not entitled to a judgment as a matter of law based on the facts in the AR.

D.   **OBJECTIONS 2,3, and 4**

The Plan grants BCBSLA "***full discretionary authority***" to determine the eligibility for benefits and/or to construe and interpret the terms of the Plan."[5] Under ERISA, when the language of an ERISA plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion.[6]

---

[4] AR 131-132; 277
[5] AR 091
[6] *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La.2007); citing *High v. E–Systems, Inc.*, 459 F.3d 573 (5th Cir.2006); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir.1999).

However, the Magistrate Judge erroneously held that that the case does not present issues as to Salim's eligibility for benefits, or BCBSLA's construction of the terms of the Benefits Plans[7]. (R&R pg. 14).

BCBSLA forwarded to Salim a letter denying authorization for *Proton Treatment Delivery, Simple* as not medically necessary.[8] [9] After exhausting all levels of appeal[10], Plaintiff filed a Petition ("Petition") commencing this civil action, entitled *"Robert L. Salim v. Blue Cross and Blue Shield of Louisiana,"* was filed on February 28, 2019 in the Tenth Judicial District Court, Parish of Natchitoches, State of Louisiana, bearing Case Number 90,952, Division "A."[11]

In Paragraphs 9 and 16 of Plaintiff's Petition, Plaintiff makes an explicit claim for benefits under the Plan. In addition, in the Notice of Removal[12], BCBSLA alleges that Plaintiff's claim is a claim for benefits under the Plan which Plaintiff has not disputed. Plaintiffs claim for medical services (PBT) to be paid falls squarely under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).[13] In addition, Plaintiff's claim for PBT is without a doubt a claim for medical services which is defined as a benefit[14] under the Plan.

The Magistrate Judge's holding that this is a claim for coverage for medical services is another way of saying a claim for benefits based on the law, Plan language, and the

---

[7] PPO Group Care Group Health Benefit Plan, Contract XXXXX1635 ("Plan"), was issued to Robert L. Salim, APC and provided coverage Salim.(AR 18-100).
[8] AR 130-134
[9] AIM Specialty Health ("AIM") assists in the management of BCBSLA health benefits plans. AIM is an independent company that provides utilization management for certain services on behalf of BCBSLA.
[10] *See* Submission Brief of Defendant (Doc. 34) Pgs. 1-3
[11] Doc. 1-2
[12] Doc. 1
[13] (a) Persons Empowered to Bring Civil Action – A civil action may be brought
(1) by a participant or beneficiary –
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
[14] Benefits – Coverage for healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies covered under this Plan. We base the payment for Benefits on the Allowable Charge for Covered Services. (AR 029).

pleadings. The Magistrate Judge's erroneous holding that Plaintiff's claim is not a claim for benefits interdicted the proper legal analysis , the two-step process-abuse of discretion standard as held consistently by the Fifth Circuit.[15]

If the Magistrate Judge had used the proper legal standard, abuse of discretion, in deciding this matter, BCBSLA submits that its denial; of PBT therapy for the Plaintiff was not medical necessary as defined under the policy  and therefore not an abuse of discretion.[16]

For this reason alone, BCBSLA objections should be maintained and the R&R should be denied and judgment entered herein for BCBSLA.

### E. OBJECTIONS 5,6, and 7

The Magistrate Judge found that the evidence in the AR proved that was a nationally accepted standard of care for advanced head and neck cancer in 2018 and thereby proving that it was medically necessary under the Plan.  In addition in FN 6 of the R&R  on page 14, the Magistrate Judge finds that "However, Salim does not dispute BCBSLA's construction of the Plan. Instead, he disputes  BCBSLA's factual finding that PBT was not medically necessary. Therefore, the test for a legally correct construction of the Plan is not applicable in this case."[17]  This finding by the court is circular in logic and legally incorrect.  Whether PBT is or is not medically necessary without question involves the construction of the Plan in particular the definition of medical necessary.[18] Ironically, despite stating that the legally correct construction of the Plan is not applicable in this

---

[15] *Aucoin v. RSW Holdings, L.L.C.*, 494 F.Supp.2d 418, 421–22 (M.D. La.2007); citing *High v. E–Systems, Inc.,* 459 F.3d 573 (5th Cir.2006); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 213 (5th Cir.1999)
[16] *See*  Submission Brief of Defendant (Doc. 34) Pgs.3-11.  The evidence in the AR supporting BCBSLA's denial of PBT therapy for the Plaintiff will be discussed further below.
[17] R&R pg. 14-FN6.
[18] AR 035

8

case; the Magistrate Judge cited the definition of "medically necessary" from the Plan and then his interpretation of the facts in the AR followed.[19]

"The U.S. Supreme Court has instructed federal courts to develop a federal common law of rights and obligations under ERISA-regulated benefits plans."[20] "In applying that dictate to the resolution of disputes regarding participants rights under ERISA benefit plans, the federal courts have followed traditional principles of trust and contract law."[21]  The pertinent provision from the Plan regarding "medically necessary" are as follows:

> The Plan fully defines "Medically Necessary" at AR 035 as:
>
> Medically Necessary (or Medical Necessity) - Healthcare services, treatment, procedures, equipment, drugs, devices, items or supplies that a Provider, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
>
> 1. in accordance with nationally accepted standards of medical practice;
>
> 2. clinically appropriate, in terms of type, frequency, extent, level of care, site and duration, and considered effective for the patient's illness, injury or disease; and
>
> 3. not primarily for the personal comfort or convenience of the patient, or Provider, and not more costly than alternative services, treatment, procedures, equipment, drugs, devices, items or supplies or sequence thereof and that are as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.
>
> For these purposes, "nationally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community,

---

[19] R&R pgs15-17
[20] *In re Roy*, 726 So.2d 1048, 1050, 31,383 La.App. 2 Cir. 1/20/99, 3 (La.App. 2 Cir.,1999)*citing Ryan by Capria–Ryan v. Federal Express Corp.*, 78 F.3d 123 (3d Cir.1996), *citing, Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).
[21] *In re Roy*, 726 So.2d 1048, 1050, 31,383 La.App. 2 Cir. 1/20/99, 3 (La.App. 2 Cir.,1999)*citing Sunbeam–Oster Co. Group Ben. Plan, supra*; *Ryan by Capria–Ryan, supra*.

>Physician Specialty Society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.

The Plan further provides in Article XVII as follows:

>Any of the limitations and exclusions listed in this Benefit Plan may be deleted or revised as shown in the Schedule of Benefits. Unless otherwise shown as covered in the Schedule of Benefits, the following are not covered, REGARDLESS OF CLAIM OF MEDICAL NECESSITY:
>
>Services, treatments, procedures, equipment, drugs, devices, items or supplies that are not **Medically Necessary**. The fact that a Physician or other Provider prescribes, orders, recommends or approves a service or supply, or that a court orders a service or supply to be rendered, does not make it Medically Necessary. (Emphasis Added)[22]

The Magistrate Judge at Pages 176-18 of the R&R held as follows:

>"Salim has carried his burden of proving that PBT was a nationally-accepted standard of care for advanced head and neck cancer in 2018. Because substantial evidence does not support BCBSLA's finding that PBT was not medically necessary for treatment of Salim's cancer, BCBSLA abused its discretion in denying coverage for Salim's PBT."

First, the Magistrate Judge does not address the construction of the Plan by BCBSLA, The Magistrate Judge held that Salim proved that PBT was a nationally accepted standard of care for advanced head and neck cancer in 2018. [23]Even if that is true which is denied, then that still does not make PBT medically necessary under the Plan. Under the definition of medically necessary, nationally accepted standard of care is only one of a three-part test.[24] The AR does not support that PBT meets Parts B and C of the

---

[22] AR 055
[23] The burden of proof used by the Magistrate Judge is unclear but appears to be a preponderance of the evidence which is legal error.
[24] AR 035

10

definition of medically necessary under the Plan. More importantly, the Magistrate Judge does not discuss these two provisions as it related to Salim's claims. Therefore, the Magistrate Judge's construction of the Plan is not a fair reading of the Plan.

On Pages 16-18 of the R&R, The Magistrate Judge relies on the information provided by Plaintiff's physician Dr. Clifton Fuller that PBT is medically necessary for the Plaintiff. However, the Magistrate Judge fails to address the provisions of the Plan again. The Plan provides that:

> "The fact that a Physician or other Provider prescribes, orders, recommends or approves a service or supply, or that a court orders a service or supply to be rendered, **does not make it Medically Necessary**." (Emphasis Added)[25]

Therefore, based on the Plan language Dr. Fuller's opinion relied on by the Magistrate Judge does not make PBT medically necessary for the Plaintiff.

To determine whether the administrator's interpretation of the Plan was legally correct, the key factor a court must consider is "whether the administrator's interpretation was consistent with a fair reading of the plan."[26] If the administrator's interpretation of the plan was legally correct, "the inquiry ends and there is no abuse of discretion."[27]

On October 10, 2018, M. D. Anderson Cancer Center sent a Preauthorization request to BCBSLA .[28] On October 12, 2018, AIM on behalf of BCBSLA forwarded a letter to Salim denying authorization for *Proton Treatment Delivery, Simple* as not medically

---

[25] AR 055
[26] *Id*. Other factors the court considers are "whether the administrator has given the plan a uniform construction...and...any unanticipated costs resulting from different interpretations of the plan." *Id; see also Stone,* 570 F.3d at 258.
[27] *Stone,* 570 F.3d at 258; *see also Ellis,* 394 F.3d at 269-70 and *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 608 (5th Cir.1998)("A determination that a plan administrator's interpretation is legally correct pretermits the possibility of abuse of discretion.").
[28] AR 120-129

11

necessary.[29] On October 12, 2018, BCBSLA also denied authorization for *Special Radiation Treatment Procedure and Guidance for Localization of Target Delivery of Radiation Treatment Delivery* as not medically necessary.[30] The October 12 denial was made by Dr. Dierdre Barfield, a Senior Medical Director at BCBSLA who found:

> We cannot approve this request for a Special Treatment Procedure. This is used when the doctor performing the radiation therapy uses extra steps when planning the treatment. It is used only in certain situations. It is used if you will also be getting intravenous chemotherapy with radiation. Your doctor did not tell us that this is the case for you. For this reason, this procedure is not medically necessary for you.

In short BCBSLA determined that the PBT for Salim was not medically necessary because it is a special type of radiation treatment that is used to treat head and neck cancer when the area has been radiated before. The facts in the administrative record show that Salim had not had his neck radiated before the original pre-authorization request.[31] Dr. Barfield used the AIM Clinical Appropriateness Guidelines in making this determination.[32]

On October 20, 2018, BCBSLA responded to an appeal filed by Salim on October 17, 2020 and upheld the denial on appeal as the treatment was not medically necessary.[33] Sanath Kumar, MD a board-certified radiation oncologist with AllMed Health Management ("AllMed"),[34] in upholding the denial found that:

> "The policies for Image Guidance in Radiation Oncology and Special Treatment Procedure and Special Physics Consult do not apply as image

---

[29] AR 130-134
[30] AR 135-144
[31] AR 131
[32] AR 131-132
[33] AR 193-219
[34] AllMed is an URAC accredited IRO who conducts both external reviews of medical decisions made by medical insurers and conducts internal reviews of medical decision made by medical insurers like BCBSLA in this case. URAC is a non-profit organization that helps promote health care quality by providing accreditation for companies and organization that offer medical services.

guidance for proton beam therapy will not be utilized and there is no extra time, effort, or resources associated with complex radiation therapy required. The AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer….Although there are several trials currently underway, there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers. Therefore, the requested proton beam therapy is not medically necessary for this patient based on the clinical documentation and the policy criteria."

October 30, 2018, MD Anderson Proton Therapy Center instituted a second level appeal by requesting an urgent external review by an IRO[35]. On October 31, 2018, MRIA, the IRO, also found that PBT was not medically necessary in the case of Salim. MRIA specifically found that the "AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer."[36]

The Plan's language is clear and unambiguous that it does not provide benefits for treatments like PBT that are not medically necessary. BCBSLA's interpretation was a fair reading of the plan, as it relied upon nationally accepted standards as enunciated in both the initial denial, the appeal decision and the IRO decision. BCBSLA's interpretation that PBT is not medically necessary within the definition of that term in the Plan for Salim is supported by concrete evidence in the AR[37] and therefore is a fair reading of the Plan.

BCBSLA objections should be maintained and the R&R should be denied.

F.  **OBJECTION 8**

Only if the court finds the administrator did not give the plan the legally correct interpretation will it determine whether the administrator's decision was an abuse of

---

[35] Please See Footnote 10 for definitions of an IRO and the external review process.
[36] AR 272
[37] This issue will be discussed further below.

discretion.**38**  In doing so, the Court "must inquire only whether the record adequately supports the administrator's decision; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim '***without some concrete evidence in the administrative record***.'"**39**  Abuse of discretion is synonymous with the arbitrary and capricious standard.**40**  A decision is arbitrary and capricious only if "made without a rational connection between the known facts and the decision or between the found facts and the decision."**41**  Ultimately, the "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end."**42**

For the Magistrate Judge to find that there is not substantial evidence in the record to support BCBSLA's denial of the pre-authorization for PBT is clear error.

The AR contains the following evidence:

Salim was diagnosed with throat cancer in or around September 2018.**43** Salim sought treatment from MD Anderson Cancer Center.  On October 10, 2018, a Pre-authorization request from M. D. Anderson Cancer Center was sent to BCBSLA.**44** On October 12, 2018, BCBSLA forwarded to Salim a letter denying authorization for *Proton*

---

<sup>38</sup> *Id.*
<sup>39</sup> *Truitt v. Unum Life Ins. Co. of Am.,* 729 F.3d 497, 513-14 (5th Cir.2013), cert. denied, -- U.S. -- 134 S.Ct. 1761, 188 L.Ed.2d 593 (2014)(holding that record contained "concrete evidence" supporting denial of plaintiff's ERISA disability claim, including e-mails showing "that [plaintiff's] travel schedule was rigorous" and surveillance video showing plaintiff "walking, driving, and bending down, and lifting and carrying boxes, bags, coolers, pumpkins, and a dog"); *Gooden v. Provident Life & Accident Insurance Co.,* 250 F.3d 329, 333 (5th Cir.2001) (quoting *Vega,* 188 F.3d at 302)(emphasis added).  Under the law of this circuit, in an ERISA matter, when assessing factual questions the court is constrained to the administrative record considered by the administrator in making the challenged decision.  *See Vega,* 188 F.3d at 299-300.
<sup>40</sup> *Wade*, 493 F.3d at 540.
<sup>41</sup> *Meditrust,* 168 F.3d at 215 (quoting *Bellaire Gen. Hosp.*, 97 F.3d at 828-29).
<sup>42</sup> *Vega,* 188 F.3d at 297.
<sup>43</sup> AR 124-125
<sup>44</sup> AR 120-129

14

*Treatment Delivery, Simple* as not medically necessary.[45] [46]  On October 12, 2018, BCBSLA also denied authorization for *Special Radiation Treatment Procedure and Guidance for Localization of Target Delivery of Radiation Treatment Delivery* as not medically necessary.[47]

On October 17, 2018, Salim sent a letter to Juanita I. Rodriguez of BCBSLA stating the company was arbitrary and capricious in its denial of the proton beam therapy.[48] BCBSLA treated this letter as Salim instituting a first level appeal under his contract.[49]

On October 20, 2018, BCBSLA upheld the denial of the pre-authorization on appeal as the treatment was not medically necessary.[50]  BCBSLA found that:

> "Image Guidance in Radiation Oncology and Special Treatment Procedure and Special Physics Consult do not apply as image guidance for proton beam therapy will not be utilized and there is no extra time, effort, or resources associated with complex radiation therapy required. The AIM guidelines: Radiation Oncology, Proton Beam Therapy, state that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer.... Although there are several trials currently underway, there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers."

October 30, 2018, MD Anderson Proton Therapy Center instituted a second level appeal by requesting an urgent external review by an IRO.[51]  MRIA[52] sent correspondence

---

[45] AR 130-134
[46] AIM Specialty Health ("AIM") assists in the management of BCBSLA health benefits plans. AIM is an independent company that provides utilization management for certain services on behalf of BCBSLA.
[47] AR 135-144
[48] AR 157
[49] AR-120-225
[50] AR 193-219
[51] AR 227-270
[52] MRIA is an IRO. Pursuant to regulations of the Louisiana Department of Insurance (LDI) and *La. R.S. 22:2391, et seq.*, and federal law. IROs, such as MRIA, are randomly allotted by the LDI to review internal decisions made by medical insurers in response to member appeals.  MRIA is not affiliated with BCBSLA in any manner.

to Robert Salim dated October 31, 2018, stating that the prior denial of the requested PBT was upheld. [53]

On pages of 2-5 of the R&R, the Magistrate Judge also discusses the evidence in the AR which BCBSLA submits is concrete evidence with a rational connection with the decision of BCBSLA to deny Plaintiff's pre-authorization for PBT.

At the bottom of page 15 of the R&R, the Magistrate Judge references evidence in the AR that supported BCBSLA's decision to deny Plaintiff's pre-authorization for PBT. The Magistrate Judge stated as follows:

> "On October 18, 2018, BCBSLA's first physician-reviewer, Dr. Kumar, stated PBT was not medically necessary because "there are currently no published randomized studies comparing proton therapy to Intensity Modulated Radiation Therapy (IMRT) in the treatment of head and neck cancers." That physician reviewer also cited the AIM guidelines for Radiation Oncology, Proton Beam Therapy, which stated that proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer who have not previously had radiation therapy."

On page 16, the Magistrate Judge then cites from Plaintiff's treating physician:

> "Dr. Fuller presented peer-reviewed evidence and specialty society policy statements to show that PBT was the current nationally-accepted standard of care for advanced head and neck cancer. Dr. Fuller showed that most of the evidence relied on by BCBSLA's reviewer appears was either outdated or did not pertain to the treatment of head and neck cancer."

The Magistrate Judge discounted BCBSLA's physician reviewer's evidence and cited favorably to Plaintiff's treating physician, Dr. Kamur. In doing this, the Magistrate Judge erred in not applying the proper standard in reviewing the AR to determine if there is substantial/concrete evidence in the AR to support BCBSLA's denial of Plaintiff's pre-authorization for PBT. BCBSLA submits that the Magistrate Judge weighed and evaluated the evidence favorable to the Plaintiff which is not the proper standard in evaluating

---

[53] AR 271-275

16

evidence in the AR. Also, this method of review by the Magistrate Judge also in direct contradiction of the Plan language. The Plan provides that:

> "The fact that a Physician or other Provider prescribes, orders, recommends or approves a service or supply, or that a court orders a service or supply to be rendered, **does not make it Medically Necessary**." (Emphasis Added)[54]

In addition, the Magistrate Judge also substituted his own medical judgment for that of the physician reviewers in the AR. On page 17 of the R&R, The Magistrate Judge found the following:

> "Therefore, the final reviewer's statement that Salim's cancer did not meet the requirement of "significant macroscopic involvement of the skull base" is a misstatement of the NCCN policy, and does not support a finding that PBT was not medically necessary for treatment of Salim's cancer."

This finding by the Magistrate Judge is another example of the improper standard of review being applied to the evidence in the AR. The Magistrate Judge weighed evidence and made a credibility determination that Dr. Kumar's position and his evaluation of the NCCN policy and the medical evidence while discounting the IRO physician reviewer or what the Magistrate Judge calls the final reviewer. The final physician reviewer was from a completely independent review organization (IRO) not associated with either party while the Plaintiff's doctor had his own financial self-interest at stake. This issue is not discussed by the Magistrate Judge.

The jurisprudence teaches that the question for the court is to ask if the AR contains substantial or concrete evidence to support BCBSLA's denial of the pre-authorization for Plaintiff's PBT. The R&R exceeds this legal mandate by going beyond the limited scope of its review, substituting its own judgment for that of BCBSLA. "A court

---

[54] AR 055

may not substitute its judgment for that of the plan administrator.[55] The abuse of discretion standard exists to 'ensure that administrative responsibility rests with those whose experience is daily and continual, not with judges whose exposure is episodic and occasional.'"[56]

The Magistrate Judge's legal and factual errors, which resulted in an improper application of the abuse of discretion standard, has led to the court substituting its ab initio view of the administrative record. That process is not the process contemplated nor required by ERISA.

## **CONCLUSION**

BCBSLA submits that its well-founded objections should be to the R&R should be maintained. After a *de novo* review of the record, this Honorable Court should find that based on a fair reading of the plan and the evidence in the administrative record, BCBSLA did not abuse its discretion in denying Salim's preauthorization request for PBT to treat neck cancer.

Furthermore, Plaintiff's case should be dismissed with prejudice.

---

[55] *C Marziale v. Hartford Life and Accident Ins.,* No. 01–480, 2002 WL 1359639, *4 (E.D.La. Jun. 20, 2002) *citing*. *Chapman v. Prudential Life Ins. Co. of America*, 267 F.Supp.2d 569, 577 (E.D.La.,2003)
[56] *Id.*

Respectfully Submitted:

By:    */s/ Douglas M. Chapoton*
Richard A. Sherburne (LA Bar No. 02106)
Jessica W. Chapman (LA Bar No. 31097)
Douglas M. Chapoton (LA Bar No. 25616)
5525 Reitz Avenue (70809)
Post Office Box 98029
Baton Rouge, Louisiana 70898-9029
Telephone:  (225) 295-2116
Facsimile:  (225) 297-2760
Richard.Sherburne@bcbsla.com
Jessica.Chapman@bcbsla.com
Douglas.Chapton@bcbsla.com

*Attorneys for Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by filing the same in this Court's CM/ECF system on this 27th day of June, 2020.

*/s/ Douglas M. Chapoton*
Douglas M. Chapoton