# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 25, 2023

Mr. Tony R. Moore
Western District of Louisiana, Alexandria
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

     No. 22-30573   Salim v. LA Health Svc & Indemnity
                            USDC No. 1:19-CV-442

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                            Sincerely,

                            LYLE W. CAYCE, Clerk

                            By: _____
                            Allison G. Lopez, Deputy Clerk
                            504-310-7702

cc:  Mr. Douglas Michael Chapoton
     Mr. Ronald E. Corkern Jr.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 3, 2023
Lyle W. Cayce
Clerk

No. 22-30573

Robert L. Salim,

*Plaintiff—Appellee,*

versus

Louisiana Health Service & Indemnity Company, *doing business as* Blue Cross and Blue Shield of Louisiana,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:19-CV-442

_____

Before Higginbotham, Southwick, and Willett, *Circuit Judges.*

JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

Certified as a true copy and issued
as the mandate on May 25, 2023

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 3, 2023

No. 22-30573

Lyle W. Cayce
Clerk

Robert L. Salim,

                        *Plaintiff—Appellee*,

versus

Louisiana Health Service & Indemnity Company, *doing business as* Blue Cross and Blue Shield of Louisiana,

                        *Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:19-CV-442

_____

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.

Per Curiam:[*]

    Robert Salim purchased health insurance from the Louisiana Health Service & Indemnity Company ("Blue Cross"). Salim later sought coverage for proton beam therapy to treat his throat cancer. Citing an internal guideline, Blue Cross denied coverage, deeming proton therapy not medically necessary. Salim sued, arguing that the guideline relied on a third-

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

party source that had since been updated to specifically approve proton therapy for exactly his condition. The district court held that the denial was an abuse of discretion, and it ordered Blue Cross to provide coverage. We AFFIRM.

I

Salim is a business owner who bought a health-insurance plan from Blue Cross to cover himself and his employees (the "Plan"). While the Plan was in effect, Salim was diagnosed with throat cancer. His medical provider requested preauthorization for "proton therapy" from AIM Specialty Health, a company that helps Blue Cross administer the Plan. AIM denied the treatment as "not medically necessary." AIM reasoned that Salim had no history of cancer, and that proton therapy is used only "when the same area has been radiated before." AIM also denied Salim's appeal. AIM's denials cited only one source: the "clinical appropriateness guideline titled Radiation Oncology: Proton Beam Therapy" (the "Guideline").

Salim appealed to Blue Cross, which denied the appeal. Relying solely on the Guideline, Blue Cross explained that "proton beam radiation therapy is not considered medically necessary in adult patients with head and neck cancer." Salim then initiated a second-level appeal with Blue Cross by requesting that an independent medical organization review the denial. As part of that appeal, Dr. Clifton Fuller, who is Salim's physician, described three flaws in the Guideline that AIM and Blue Cross had relied on.

Dr. Fuller first argued that the Guideline relied on an outdated and superseded policy issued by the American Society for Radiation Oncology (the "ASTRO Policy"). According to Dr. Fuller, the ASTRO Policy "ha[d] been updated . . . to specifically include proton beam therapy as both appropriate and medically necessary for exactly Mr. Salim's diagnosis, advanced head and neck cancer." Second, Dr. Fuller argued that the

2

Guideline "glaringly omitted" reference to a separate source, the National Comprehensive Cancer Network Head and Neck Guidelines (the "NCCN Policy"). *Id.* Dr. Fuller viewed that omission as questionable because Blue Cross *did* rely on NCCN recommendations for "other disease sites." Third, Dr. Fuller pointed out that the Guideline cited only three articles related to head and neck cancer, and that all three "specifically endorse the use of proton therapy" for head and neck cancer.

After describing the AIM Guideline's three flaws, Dr. Fuller went on to explain why he viewed proton therapy as medically necessary for Salim's condition. He cited over a dozen evidence-based publications as support for his conclusion that proton therapy was medically necessary. He also explained that the ASTRO Policy and the NCCN Policy each "consider proton beam therapy the standard of care."

Blue Cross referred Salim's second-level appeal to an independent reviewer, the Medical Review Institute of America (the "Institute"). The Institute denied the appeal, giving two reasons. First, citing several articles, the Institute explained that "most investigators recommend additional study . . . before adopting [proton therapy] as a standard treatment option for patients with head and neck cancer." Second, the Institute concluded that the ASTRO Policy and the NCCN Policy support proton therapy for head and neck cancer only when the patient has "a lesion with significant involvement of structures at the skull base." According to the Institute, Salim "d[id] not have significant macroscopic disease involvement in the region of the skull base," and therefore the ASTRO and NCCN Policies did not support proton therapy as medically necessary to treat his cancer.

The Institute's decision operated as a final denial of coverage. Despite that denial of coverage, Salim chose to undergo proton therapy.

No. 22-30573

Salim sued Blue Cross in Louisiana state court, but Blue Cross removed to federal court. There, the parties stipulated that ERISA (the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1462) governs the Plan and preempts all state-law causes of action. They also stipulated that Blue Cross has full discretion "to determine eligibility for benefits" and "construe the terms of the Plan." Salim argued that Blue Cross's denial was an "arbitrary and capricious" abuse of discretion because it relied on "outdated literature," and he asked the district court to "reverse[]" the denial of coverage. The district court assigned the case to a magistrate judge.

The magistrate judge agreed with Salim. Because the Plan gives Blue Cross full discretionary authority to make determinations regarding benefits, the judge reviewed Blue Cross's denial of coverage for an abuse of discretion. The parties agreed that the Plan covers only "medically necessary" treatments, and they agreed on that term's plain meaning. Accordingly, the magistrate judge framed the question as whether "[Blue Cross] abused its discretion in finding that [proton therapy] is not the accepted standard of care for [Salim's] head and neck cancer—a fact related to coverage." After reviewing the overlapping denial explanations from AIM, Blue Cross, and the Institute, the magistrate judge found that "substantial evidence does not support [Blue Cross]'s finding that [proton therapy] was not medically necessary for treatment of Salim's cancer." Accordingly, the magistrate judge concluded that Blue Cross "abused its discretion in denying coverage."

The district court adopted the magistrate judge's report and recommendation, and it entered summary judgment for Salim "on the issue of coverage" for proton therapy. The court also ordered Blue Cross "to pay Salim's medical bills stemming from his receipt of the subject [proton therapy] treatments." Blue Cross timely appealed.

## II

We review "summary judgment de novo, applying the same legal standards that controlled the district court's decision." *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 767 (5th Cir. 2018) (citing *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006)). In other words, we "review the plan administrator's decision from the same perspective as the district court." *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)).

Blue Cross argues that the district court should have treated proton therapy's medical necessity as a legal question (rather than a factual question). In the alternative, Blue Cross argues that substantial evidence supports its decision to deny coverage for proton therapy. We disagree on both fronts.

### A

Because the Plan "lawfully delegates discretionary authority" to Blue Cross, judicial review "is limited to assessing whether the administrator [that is, Blue Cross] abused that discretion." *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989)). A plan administrator can abuse its discretion by denying claims "based on legal *or* factual grounds." *Id.* at 248 (emphasis added). Legal grounds include "interpretation" of a plan's terms, whereas factual grounds include "application" of a plan's terms. *Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 956 (5th Cir. 2019) (per curiam) (emphasis omitted).

For legal disputes—that is, disputes about a plan's *meaning*—the abuse-of-discretion analysis has "two steps." *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 282 (5th Cir. 2019). The first step

5

asks whether the administrator's reading is "legally correct." *Id.* "If so, the inquiry ends, and there was no abuse of discretion." *Id.* But if not, then we proceed to the second step, which uses several factors to determine whether the administrator's legally erroneous interpretation of the plan's terms still falls within the administrator's discretion. *See id.*

For factual disputes—that is, disputes about a plan's *application*—the abuse-of-discretion analysis asks whether the administrator relied "on evidence, even if disputable, that clearly supports the basis for its denial." *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019) (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)). "If the [administrator]'s decision is supported by substantial evidence *and* is not arbitrary and capricious, it must prevail." *Id.* (emphasis added) (quoting *Killen v. Reliance Stand. Life Ins. Co.*, 776 F.3d 303, 307 (5th Cir. 2015)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004)). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quoting *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019)). In sum, "we must uphold the determination if our review 'assures that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.'" *Id.* (alterations adopted) (quoting *Holland*, 576 F.3d at 247)).

The district court correctly concluded that this case involves a "factual dispute" rather than an "interpretive dispute." *See Rittinger*, 914 F.3d at 956. Blue Cross and Salim agree that the Plan covers only "medically necessary" treatments, and they agree on that term's definition. Because the parties agree about what the Plan means, their dispute involves only the "*application* of the [P]lan terms." *Id.* Thus, the question is whether proton

6

No. 22-30573

therapy was medically necessary to treat Salim's cancer. "[T]he decision to deny benefits based on lack of medical necessity involves a review of the facts." *Meditrust Fin. Servs. Corp.*, 168 F.3d at 214; *see Katherine P. v. Humana Health Plan, Inc.*, 959 F.3d 206, 208 (5th Cir. 2020).[1]

Blue Cross's contrary arguments are unavailing. For instance, Blue Cross argues that a court should look for an abuse of discretion "[o]nly if the court finds the administrator did not give the plan the legally correct interpretation." Similarly, Blue Cross argues that the "interpretation of the Plan is necessarily in dispute" because "the only place 'medically necessary' is defined is the Plan." This line of argument errs by trying to replace the "substantial evidence" factual analysis with the two-step legal analysis for interpretive errors. *See Rittinger*, 914 F.3d at 956 (distinguishing between "(1) an interpretive dispute and (2) a factual dispute" (quotations omitted)); *Meditrust Fin. Servs. Corp.*, 168 F.3d at 214 (rejecting the standard-of-review argument that Blue Cross advances here).

Blue Cross also argues that the district court erred by drawing "a distinction between a claim for coverage for medical services . . . and a claim for benefits." We disagree. The district court used the words "eligibility for benefits" when referring to the Plan's meaning (a question of law), but it used the word "coverage" when referring to the Plan's application (a question of fact). In context, the district court was distinguishing factual questions from legal questions; it was not distinguishing coverage from benefits. The district court was therefore correct that "the test for a legally

---

[1] Medical necessity is not *always* a question of fact. For example, a question of law arises—and the two-step abuse-of-discretion framework applies—when the parties' dispute requires a court to "interpret[] the term 'medically necessary' as expressly defined in the insurance contract." *Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 643 (5th Cir. 1997) (per curiam). Here, however, the question is one of application—not interpretation.

correct construction of the Plan is not applicable in this case." Instead, the "substantial evidence" standard governs. *See Nichols*, 924 F.3d at 808.

B

We also agree with the district court that "substantial evidence does not support" Blue Cross's decision. In this ERISA case, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rittinger*, 914 F.3d at 957 (citation omitted). Blue Cross is "not legally obligated to weigh any specific physician's opinion more than another's." *Holland*, 576 F.3d at 250. Rather, if there is "more than a scintilla" of evidence supporting denial, then Blue Cross prevails—as long as its decision "is not arbitrary and capricious." *Nichols*, 924 F.3d 808 (citations omitted); *cf Michael J. P. v. Blue Cross & Blue Shield of Tex.*, 2021 WL 4314316, at *9 (5th Cir. 2021) (Oldham, J., concurring) ("ERISA's 'substantial evidence' is radically different from 'substantial evidence' elsewhere in law."). That is because a court is "not supposed to weigh and balance the evidence." *Rittinger*, 914 F.3d at 960. Still, even under this highly deferential scheme, "a plan administrator 'may not arbitrarily refuse to credit a claimant's reliable evidence.'" *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

Under the Plan, a treatment is "medically necessary" if it is (A) "in accordance with nationally accepted standards of medical practice," (B) "clinically appropriate," and (C) "not primarily for the personal comfort or convenience of the patient, or Provider, and not more costly than alternative services . . . that are as likely to produce equivalent therapeutic or diagnostic results." Blue Cross argues that the record contains substantial evidence showing that proton therapy is not "in accordance with nationally accepted standards" (element (A)). Blue Cross also argues that there is "no evidence" regarding whether proton therapy was "clinically appropriate," primarily for

8

Case: 22-30573    Document: 00516763279    Page: 11    Date Filed: 05/25/2023
Case 2:20-cv-04533-DCJ-JPM   Document 165-3   Filed 05/26/23   Page 11 of 13 PageID #: 960

No. 22-30573

"personal comfort," or "not more costly than alternative services" (elements (B) and (C)). We disagree.

Start with AIM's denials and with Blue Cross's first-level appeal denial. Each cited only one source for denying coverage for proton therapy: the Guideline. The Guideline, in turn, relied on the ASTRO Policy as a nationally accepted standard. Yet as Dr. Fuller pointed out, the ASTRO Policy "has been updated . . . to specifically include proton beam therapy as both appropriate and medically necessary for exactly Mr. Salim's diagnosis, advanced head and neck cancer." Indeed, the ASTRO Policy designates proton therapy as "medically necessary" both for "[t]umors that approach or are located at the base of the skull" and for "[a]dvanced . . . head and neck cancers."

The updated ASTRO Policy is not *competing* evidence that requires a court to weigh one policy against another. Rather, the updated Policy is *superseding* evidence showing that ASTRO—a source which AIM and Blue Cross treated as reliable—in fact classifies proton therapy as medically necessary for Salim's condition. A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence." *Schexnayder*, 600 F.3d at 469; (quoting *Black & Decker*, 538 U.S. at 834). Perhaps Blue Cross has discretion to ignore ASTRO altogether. But it does not have discretion to deny Salim's claim by attributing to ASTRO a view that ASTRO does not hold.

The Institute's review does not cure Blue Cross's decision. Consider the Institute's statement that "most investigators recommend additional study . . . before adopting [proton therapy] as a standard treatment option for patients with head and neck cancer." This generic claim about unnamed investigators does nothing to address the problem that Dr. Fuller highlighted, which was that the investigator that Blue Cross trusted—ASTRO—in fact viewed proton therapy as medically necessary for Salim's diagnosis. Nor did

Case: 23-30573 Document: 00516763279 Page: 12 Date Filed: 05/25/2023
Case 2:20-cv-04323-DCJ-DPC Document 54-2 Filed 05/25/23 Page 12 of 13 PageID #: 961

No. 22-30573

Dr. Fuller recommend proton therapy as a "standard" treatment. Just the opposite: "I am not advocating for the routine treatment of head and neck cancer; Mr. Salim has massive oral disease." Given the ASTRO Policy that Blue Cross relied on, the Institute's generic claim is not "such relevant evidence as a reasonable mind might accept as adequate to support" the denial. *Rittinger*, 914 F.3d at 957 (citation omitted).

Nor do we see substantial evidence in the Institute's conclusion that the updated ASTRO Policy and the NCCN Policy support proton therapy for head and neck cancer *only* when the patient has "a lesion with significant involvement of structures at the skull base." Relevant excerpts from both Policies are in the record. The ASTRO Policy designates proton therapy as "medically necessary" for "tumors . . . at the base of the skull" *or* for "[a]dvanced head and neck cancers." "[A]dvanced head and neck cancer" was Salim's exact diagnosis. The Institute did not address this aspect of the ASTRO Policy. The NCCN Policy says that proton therapy is "especially important" for tumors that "invade . . . the skull base." According to the Institute, Salim "d[id] not have *significant* macroscopic disease involvement in the region of the skull base," and therefore the NCCN Policy did not apply. But the NCCN Policy requires only that the disease "invade" the skull base, not that the invasion be "significant." Salim's cancer involved "skull base invasion." Again, then, the Institute did not address the full range of diagnoses that the NCCN Policy refers to.

Finally, Blue Cross argues that "there is no evidence in the [record] that [Salim] met his burden as to parts B and C" of the Plan's definition of "medically necessary." Blue Cross also complains that "the District Court d[id] not discuss the B and C provisions." That silence is not surprising given that Blue Cross did not make this argument in the brief that it submitted to the magistrate. But Blue Cross did present this argument in its objection to

the magistrate judge's report and recommendation, albeit in only a few conclusory sentences. Assuming this argument is preserved, it lacks merit.

Dr. Fuller explained at length that proton therapy was appropriate "in this scenario" (element (B)), and that proton therapy was also "less cost[ly]" than and otherwise "[s]uperior" to other treatment options (element (C)). That explanation satisfied Salim's "initial burden of demonstrating entitlement to benefits under an ERISA plan." *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). Blue Cross had a chance to rebut Dr. Fuller's view with substantial evidence, but it focused instead on element (A). On appeal, Blue Cross has identified no evidence in the record that favors its view of elements (B) and (C), nor do we discern any such evidence. As a result, Blue Cross's final argument fails.

## III

The district court used the correct standard of review, and it correctly held that Blue Cross abused its discretion by denying coverage even when substantial evidence did not support that decision. We AFFIRM.