UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ROBERT L. SALIM** | **CIVIL DOCKET NO. 6:19-CV-00442** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## ORDER

Before the Court is a MOTION TO ENFORCE JUDGMENT (the "Motion") [Doc. 61] in which Plaintiff Robert L. Salim ("Plaintiff" or "Salim") asks the Court to direct Defendant Louisiana Health Service & Indemnity Company d/b/a Blue Cross & Blue Shield of Louisiana ("BCBSLA") to fully reimburse him for the proton beam radiation therapy ("PBT") that Salim's physician prescribed him for treatment of throat cancer.

### I. Procedural History

During the course of Salim's cancer treatment, BCBSLA denied coverage for PBT treatment recommended by his doctors. Salim's administrative appeals for reconsideration of the coverage decision were likewise denied. Salim went forward with the PBT treatment at his own cost, but subsequently filed suit in state court seeking judicial review. The Defendant removed to this Court pursuant to the federal question jurisdiction conferred by the Employee Retirement Income Security Act of 1974 ("ERISA"). [Doc. 1].

After a review of the administrative record, the Magistrate Judge issued a Report and Recommendation finding that:

> Salim has carried his burden of proving PBT was a nationally-accepted standard of care for advanced head and neck cancer in 2018. Because substantial evidence does not support BCBSLA's finding that PBT was not medically necessary for treatment of Salim's cancer, BCBSLA abused its discretion in denying coverage for Salim's PBT treatment.

[Doc. 39].

The Court adopted the Magistrate Judge's recommendations and subsequently entered an Amended Judgment ordering that BCBSLA "shall provide coverage under the Plan for Salim's Proton Beam Therapy ("PBT")" and that "the case shall be remanded to the Plan Administrator for submission of those claims by Salim and/or his medical care providers, and for a full and fair determination of benefits due under the Plan as to those claims." [Doc. 48]. The Court further held that "<u>to the extent the Plan Administrator does not pay in full the costs billed to Plaintiff for his PBT treatment, this Court shall retain jurisdiction to provide any further relief requested</u>." [Doc. 48]. BCBSLA appealed this Court's Amended Judgment, which was affirmed by the Fifth Circuit. [Doc. 54]. Two issues remain to be decided: (i) the amount of money owed Salim by BCBSLA for his PBT treatment, and (ii) reimbursement of Salim's attorney fees.

## II. <u>Costs of PBT Treatment</u>

Despite the Court's judgment, BCBSLA still refuses to reimburse the full amount Salim paid to receive PBT treatment – even though BCBSLA readily acknowledges that the cost of PBT treatment (had it been approved) would have been fully covered under the terms of Salim's Benefit Plan. [Doc. 63, pp. 5-6]. In the Motion, Plaintiff seeks reimbursement for the money he spent obtaining the PBT

treatment that BCBSLA wrongfully denied. [Doc. 61]. BCBSLA opposes the requested relief, taking the position that it should only have to pay Salim the amount of money it would have paid Salim's healthcare providers under certain negotiated reimbursement rates that – had BCBSLA approved the PBT treatment – would have applied to the services of the relevant healthcare providers. [Doc. 63]. Of course, these discounted rates were not available to Salim when he paid out-of-pocket for his medical treatment. BCBSLA fails to cite any caselaw or persuasive authority in support of its position.[1]

---

[1] BCBSLA's argument relies solely on the statutory text of ERISA and the language of the BCBSLA Benefit Plan. [Doc. 63]. § 502(a)(1)(B) of ERISA states that a civil action may be brought only, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The BCBSLA Benefit Plan defines "Benefits" as, "Coverage for healthcare services [or] treatment … covered under this Plan. We base the payment for Benefits on the Allowable Charge for Covered Services." A separate definition in the Plan states that an "Allowable Charge" is, "the lesser of the billed charge or the amount [BCBSLA] establish[es] or negotiate[s] as the maximum amount allowed for services from these Providers covered under the terms of the benefit Plan." [Doc. 63, p. 4]. But nothing in the Benefit Plan or statutory text of ERISA provides for what happens if, as is the case here, BCBSLA denies coverage and therefore does not "establish the maximum amount allowed for services."

When a contract is ambiguous, courts apply the doctrine of *contra proferentem* – or the policy of construing contractual ambiguities against the drafter. *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451–52 (5th Cir.1995); *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 283 (5th Cir. 2021) ("When construing ERISA Plan provisions … [w]e apply the rule of *contra proferentem* to ambiguous terms – construing them strictly in favor of the insured … if the plan terms remain ambiguous after applying ordinary principles of contract interpretation."); *See also*, *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253–54 (10th Cir. 2007); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 n. 7 (6th Cir.1998); *Lee v. Blue Cross/Blue Shield of Alab.*, 10 F.3d 1547, 1551 (11th Cir.1994) ("Having determined that the plan is ambiguous, we hold that application of the rule of *contra proferentem* is appropriate in resolving ambiguities in insurance contracts regulated by ERISA.").

In this case, after construing ambiguities in favor of the Plaintiff, the Court finds that because BCBSLA denied coverage and therefore did not "establish or negotiate … the maximum amount" allowed for Salim's PBT therapy with his treatment provider, the "billed charge" is the "Allowable Charge" owed to Salim under the terms of his Plan.

It is not reasonable, nor is it required by law or the terms of Salim's benefit plan, that BCBSLA should now be afforded the opportunity to retroactively take advantage of its discounted rates with Salim's medical providers at Plaintiff's significant expense. Under federal ERISA law and the terms of Salim's Benefit Plan, BCBSLA was vested with "full discretionary authority to determine eligibility for benefits and construe the terms of the Plan." [Doc. 27, p. 95]. BCBSLA abused that substantial discretion and, as a direct result, Salim has expended significant resources to both obtain the PBT treatment at his own cost and prosecute this lawsuit.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion to Enforce Judgment is GRANTED. Within three (3) days of this Order, BCBSLA shall pay Plaintiff $95,862.95 plus judicial interest, less any amounts already paid.

### III. **Reimbursement of Attorney Fees**

Also discussed in the Motion is the issue of attorney fees. ERISA authorizes the Court to award attorney fees and costs in its discretion. 29 U.S.C. § 1132(g). Prior to BCBSLA's appeal of this matter to the Fifth Circuit, the Magistrate Judge awarded attorney fees to Plaintiff in the amount of $25,000, as well as $350 in costs. [Doc. 43]. BCBSLA appealed the Magistrate Judge's order to the undersigned. [Doc. 46].

Upon consideration of BCBSLA's appeal, the subsequent attorney fees incurred by Plaintiff, and the additional briefing and evidence pertaining to the issues,

IT IS FURTHER ORDERED that the Court finds attorney fees are appropriate in this case after carefully considering the factors set forth by Fifth Circuit precedent and further finds Plaintiff counsel's hourly rate of $350 to be reasonable. Accordingly, the Court orders the parties to meet and confer in person within thirty (30) days and seek to reach an agreement on the amount of attorney fees. If unable to do so, the parties are directed to schedule a settlement conference with the assigned magistrate judge to assist in resolving this issue.

IT IS FURTHER ORDERED that the parties shall jointly provide a status update to undersigned within ninety (90) days of this Order or upon full resolution of all claims and disputes, whichever is earlier.

THUS, DONE AND SIGNED in Chambers on this 13th day of November 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE